IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-422

 No. COA20-648

 Filed 17 August 2021

 Currituck County, No. 19-CVS-239

 85’ AND SUNNY, LLC, Petitioner,

 v.

 CURRITUCK COUNTY, Respondent.

 Appeal by Respondent and cross-appeal by Petitioner from order entered

 2 March 2020 by Judge L. Lamont Wiggins in Currituck County Superior Court.

 Heard in the Court of Appeals 8 June 2021.

 Williams Mullen, by Thomas H. Johnson, Jr., and Lauren E. Fussell, for
 Petitioner-Appellee/Cross-Appellant.

 Currituck County Attorney Donald I. McRee, Jr., for Respondent-
 Appellant/Cross-Appellee.

 COLLINS, Judge.

¶1 This case arises from improvements 85 Degrees and Sunny, LLC (“Petitioner”),

 seeks to make to a campground located in Currituck County, North Carolina. Both

 Currituck County (“Respondent”) and Petitioner appeal from the superior court’s

 order reversing the Currituck County Board of Adjustment’s (“Board”)

 (1) determination of the number of campsites that existed on Petitioner’s campground

 as of 1 January 2013, and (2) conclusion that Currituck County’s Unified
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 Development Ordinance (“UDO”) permitted some, but not all, of Petitioner’s proposed

 improvements to the campground. We affirm in part and reverse in part the superior

 court’s order and remand to the superior court to essentially affirm the Board’s entire

 order.

 I. Procedural History and Factual Background

¶2 The Hampton Lodge Campground (“Campground”) has existed since at least

 May 1967. At the time the Campground began operation, the County did not regulate

 the use of property by zoning regulations. Under the County’s initial 1971 zoning

 ordinance, campgrounds were a permitted use of property in certain districts, subject

 to certain requirements. There was no documentation that the Campground’s owners

 had complied with the 1971 ordinance’s requirements for approved campgrounds and

 the Campground operated as a nonconforming use. The Campground has continued

 as a nonconforming use under subsequent County zoning regulations adopted in

 1975, 1982, 1989, 1992, 2007, and 2013.

¶3 Under the current UDO, adopted in 2013, the Campground continues to be a

 nonconforming use. The UDO provides that “[a] nonconforming use shall not be

 changed to any other nonconforming use[,]” UDO § 8.2.2., and generally “shall not be

 enlarged, expanded in area, or intensified[,]” UDO § 8.2.3.A. Additionally, section

 8.2.6. of the UDO deems all existing private campgrounds as nonconforming uses,

 subject to certain standards, including in relevant part:
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 A. General Standards

 (1) Camping is an allowed use of land only in
 existing campgrounds and campground
 subdivisions.

 ....

 (5) Modifications to existing campgrounds are
 permitted provided the changes do not
 increase the nonconformity with respect to
 [the] number of campsites that existed on
 January 1, 2013.

 B. Existing Campgrounds

 (1) Existing campgrounds may not be expanded
 to cover additional land area or exceed the
 total number of campsites that existed on
 January 1, 2013.

 UDO § 8.2.6.

¶4 Throughout the Campground’s history, owners and developers have submitted

 documentation to county entities reflecting varying numbers of campsites in

 existence. A camper subdivision plat showing over 700 campsites was submitted in

 1973, but never approved. A site plan submitted alongside an application for a

 conditional use permit for a concert in 1996 showed 234 campsites at the property,

 90 vehicular parking spaces, and a tent camping area. A site plan submitted with a

 similar application in 1997 again showed 234 campsites and a tent camping area.

 Neither plan indicated the specific number of tent campsites within the tent camping

 area.
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

¶5 Petitioner purchased the Campground in June 2018 and submitted a Major

 Site Plan (“Plan”) to Currituck County for review. The Plan showed 314 campsites

 for recreational vehicle, trailer, or camper use, and 78 campsites for tent camping.

 The Plan also proposed the following improvements:

  two new restroom and bathhouse facilities,
  a swimming pool and pool house,
  improvements to the on-site septic system,
  two dog park areas,
  playground improvements, and
  the demolition and replacement of an existing residence and barn for the
 caretaker/manager of the campground.

¶6 In its review of the Plan, the County determined that the number of campsites

 exceeded the number of campsites that existed on 1 January 2013, and the additional

 amenities shown on the Plan were not permitted under the UDO.1

¶7 In August 2018, Petitioner filed an Application for Interpretation and

 supporting materials with the Currituck County Planning and Development Director

 (“Director”). Petitioner sought a determination of (1) the number of campsites

 existing on the Campground on 1 January 2013 and (2) whether the UDO allowed

 Petitioner’s proposed improvements to the property.

¶8 The Director issued a Letter of Determination (“Letter”) on 1 January 2013

 wherein the Director determined “that 234 campsites have received some form of

 1 A copy of the County’s determination is not in the Record on Appeal but is referenced

 in Plaintiff’s Petition for Writ of Certiorari to the superior court.
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 approval between 1971 and 1997 and 234 campsites existed on January 1, 2013.” The

 Director also determined that the number of “[t]ent campsites would need to be

 calculated based on the historical tent area divided by the minimum campsite size

 (3000 square feet) required by all zoning regulations before the 2013 UDO.” The

 Director could “[]not verify, and therefore [did] not conclude, that 78 tent campsites

 were established prior to January 1, 2013.”

¶9 Regarding Petitioner’s proposed improvements, the Director interpreted the

 term “modification” in section 8.2.6.A.(5) to require that “something needs to exist

 before a change, alteration, or amendment can be made[,]” and concluded as follows:

 “only changes to existing buildings and structures are permitted”; existing facilities—

 “restroom facilities, piers, docks, bulkheads, camp store, and other recreation

 facilities”—could be modified; “[t]he new facilities listed in the application . . . such

 as the new bathroom facilities, swimming pool, pool house and the like” “are not

 limited changes but are substantial and an impermissible expansion, enlargement

 and intensification of a nonconforming use” prohibited under section 8.2.3.A.

¶ 10 Petitioner appealed to the Board. At the hearing before the Board, the Director

 testified to the history of permits applied for and issued to the Campground, including

 the 1996 and 1997 conditional use permits. Petitioner tendered Warren Eadus, who

 was accepted as an expert witness in site plans. Eadus testified that there were 408

 RV sites and 50 tent sites at the Campground. Paul O’Neal, who resided three miles
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 south of the Campground for 50 years, testified that he was hired to perform

 maintenance on the campsites in 1980. O’Neal testified that in 1980, there were 175

 to 200 campsites, and the Campground had not changed from that time. John

 Pappas, a previous owner of the Campground, testified that there were 252 utility

 hookups, that a previous music festival was held with close to 400 camping units in

 attendance, and stargazers had camped for 25 years in the wooded portion of the

 property.

¶ 11 Other previous owners averred that “[c]ampers have been free to utilize the

 entire premises for their campsite” and “[t]here has never been a limitation imposed

 on the number of the sites, the location of the sites, nor occupancy by vehicles of any

 kind, or tents, or simply sleeping bags and campfire sites.” Ann Slade, a co-manager

 of the Campground since 1998, averred that the entire Campground was used “as

 needed for tents, trailers and recreational vehicles.” Slade averred that in addition

 to the campsites with utility connections, campers would use campsites in both the

 forested and open field areas of the property. According to Slade, during music

 festivals in 1995 through 1997, approximately 400 campsites were used at the

 Campground. Similarly, James Baeurle, Petitioner’s current operator, testified to

 the Board that on many occasions, 400 to 500 people camped at the campground for

 one event.

¶ 12 After the hearing, the Board issued an order wherein it found, in part:
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 27. On January 1, 2013, there were 234 existing
 campsites and a designated area which was used for tent
 camping at Hampton Lodge.
 28. The number of campsites within the tent
 camping area should be calculated based on the designated
 area for tent camping on a scaled version of the 96/97 site
 plan, divided by the minimum campsite size (3000 square
 feet) required by all zoning regulations prior to the 2013
 UDO.
 ....
 36. Modifications to existing buildings and
 structures are permitted inasmuch as the changes do not
 extend to additional structures or to land outside the
 original structure.
 37. Sunny’s proposal and site plan includes the
 addition of new facilities to Hampton Lodge, i.e. new
 bathroom facilities, swimming pool, pool house, piers etc.

¶ 13 Upon its findings, the Board concluded, in relevant part:

 3. Pursuant to 2013 UDO §§ 2.4.16(D)(3) and 10.1,
 2013 UDO §8.2.6.A.(5) must be read in pari materia with
 the 2013 UDO, specifically 2013 UDO §8.
 4. Modifications to existing buildings and structures
 are permitted inasmuch as the changes do not extend to
 additional structures or to land outside the original
 structure.
 5. The new facilities proposed by Sunny qualify as
 an impermissible expansion, enlargement and
 intensification of a nonconforming use and are not
 permitted.

 Based upon its findings of fact and conclusions of law, the Board affirmed the

 Director’s Letter.
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

¶ 14 Petitioner petitioned the superior court for a writ of certiorari to review the

 Board’s decision. After reviewing the record on appeal, the Plan, the UDO, and the

 memoranda of the Parties, and hearing oral arguments on 27 January 2020, the

 superior court granted certiorari and reversed the Board. By written order, the

 superior court found in relevant part:

 12. The . . . requested number of RV and tent
 campsites proposed in Petitioner’s Major Site Plan are
 consistent with the number of campsites in existence on
 Hampton Lodge on January 1, 2013. Therefore, the Court
 hereby allows 314 RV sites and 78 tent sites on the
 Property and finds the number of proposed campsites does
 not exceed the number of campsites in existence on the
 property as of January 1, 2013, and does not increase or
 expand the intensity of the nonconforming use, as set forth
 in Section 8.2.6 of the UDO. Notably, the property has
 potential, excluding wetland acreage, to be developed
 differently, and more intensely, than as proposed by
 Petitioner on the Major Site Plan.
 13. . . . [A]ll health and safety improvements to
 Hampton Lodge that are included on the Major Site Plan,
 specifically including, infrastructure improvements to
 update access roads and water and septic systems on the
 property, do not violate the provisions of the UDO
 governing nonconforming uses. The new bathhouses and
 expansions of existing bathhouses proposed in the Major
 Site Plan are permitted improvements to the Property
 pursuant to the provisions of the UDO. The Court finds
 the proposed health and safety improvements to Hampton
 Lodge do not increase or intensify the nonconforming use
 and are in keeping with the public policy of the State of
 North Carolina to allow improvements to nonconforming
 uses to enhance health and safety.
 14. The Major Site Plan also proposes adding a porch
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 to the existing footprint of the Camp Store located on the
 property. While the proposed porch addition is not within
 the footprint of the Camp Store in existence on January 1,
 2013, the proposed addition is an appendage that will not
 increase the intensity or scope of the nonconforming use.
 Therefore, the proposed porch on the Camp Store is
 allowed.
 15. The Major Site Plan proposes installing a pool on
 Hampton Lodge. The pool is not permitted within the
 provisions of the UDO and is not allowed.

¶ 15 The superior court concluded, in relevant part:

 16. The . . . Board of Adjustment’s decision was
 arbitrary and capricious [and] not supported by
 substantial, competent and material evidence in view of
 the entire record as set forth above.
 17. The . . . Board of Adjustment committed an error
 of law in concluding that the new facilities proposed by
 Petitioner qualify as impermissible expansion,
 enlargement and intensification of a nonconforming use
 and are not permitted under the UDO, with the exception
 of the swimming pool.

 The superior court thus

 remanded with instructions for the Board of Adjustment to
 reverse the [Letter] and find that at least 314 campsites for
 RV, trailer, or camper use and 78 sites for ordinary tent
 camping as shown on the Major Site Plan existed as of
 January 1, 2013, and that the modifications shown on the
 Major Site Plan, except for the pool, are in compliance with
 the provisions of the UDO, should be allowed, and do not
 increase or expand the intensity of the nonconforming use.

¶ 16 Respondent appealed and Petitioner cross-appealed.
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 II. Discussion

¶ 17 On appeal, Respondent contends that the superior court erred by (1) failing to

 articulate the standard of review applied to each issue; (2) reversing the Board’s

 decision as to the number of campsites existing at the Campground on 1 January

 2013; and (3) reversing the Board’s decision that certain modifications proposed in

 Petitioner’s Plan were not permitted under the UDO. Petitioner contends that the

 superior court erred by affirming the Board’s determination that the swimming pool

 was not allowed under the UDO.

 A. Standard of Review

¶ 18 A different standard of review applies at each level of an appeal from a decision

 of an administrative official charged with enforcing a zoning or unified development

 ordinance. A “board of adjustment shall hear and decide appeals from decisions of

 administrative officials charged with enforcement of the zoning or unified

 development ordinance . . . .”2 N.C. Gen. Stat. § 160A-388(b1) (2019); N.C. Gen. Stat.

 § 153A-345.1 (2019) (“The provisions of [N.C. Gen. Stat. §] 160A-388 are applicable

 to counties.”).3 In such an appeal, “the board of adjustment may reverse or affirm,

 2 The Director is the County’s administrative official charged with enforcing the UDO,

 see UDO § 9.5.1., and is empowered to decide applications for interpretation of the UDO, see
 UDO § 2.4.16.
 3 Effective 19 June 2020, the General Assembly consolidated the provisions governing

 planning and development regulations by local governments into a new Chapter 160D of the
 General Statutes. See An Act to Clarify, Consolidate, and Reorganize the Land-Use
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 wholly or partly, or may modify the decision appealed from and shall make any order,

 requirement, decision, or determination that ought to be made.” N.C. Gen. Stat.

 § 160A-388(b1)(8). Additionally, “[t]he board shall have all the powers of the official

 who made the decision.” Id.

¶ 19 A party may seek superior court review of a board of adjustment’s decision by

 filing a petition for review in the nature of certiorari. N.C. Gen. Stat.

 § 160A-388(e2)(2) (2019).

 (1) When reviewing the decision of a decision-making board
 under the provisions of this section, the court shall ensure
 that the rights of petitioners have not been prejudiced
 because the decision-making body’s findings, inferences,
 conclusions, or decisions were:

 a. In violation of constitutional provisions, including
 those protecting procedural due process rights.

 b. In excess of the statutory authority conferred upon
 the city or the authority conferred upon the
 decision-making board by ordinance.

 c. Inconsistent with applicable procedures specified
 by statute or ordinance.

 d. Affected by other error of law.

 e. Unsupported by substantial competent evidence in
 view of the entire record.

 Regulatory Laws of the State, S.L. 2019-111 § 2; An Act to Complete the Consolidation of
 Land-Use Provisions Into one Chapter of the General Statutes as Directed by S.L. 2019-111,
 as Recommended by the General Statutes Commission, S.L. 2020-25 § 51(b).
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 f. Arbitrary or capricious.

 N.C. Gen. Stat. § 160A-393(k) (2019).

¶ 20 “Generally, the petitioner’s asserted errors dictate the scope of judicial review.”

 NCJS, LLC v. City of Charlotte, 255 N.C. App. 72, 76, 803 S.E.2d 684, 688 (2017).

 “[I]f the petitioner contends the [b]oard’s decision was not supported by the evidence

 or was arbitrary and capricious, then the reviewing court must apply the whole record

 test.” Id. (quotation marks and citations omitted). In applying the whole record test,

 the “reviewing superior court sits in the posture of an appellate court and does not

 review the sufficiency of evidence presented to it but reviews that evidence presented”

 to the board. Mann Media, Inc. v. Randolph Cnty. Plan. Bd., 356 N.C. 1, 12, 565

 S.E.2d 9, 17 (2002) (quotation marks and citation omitted). The whole record test

 requires the superior court to “examine all competent evidence (the ‘whole record’) in

 order to determine whether the [board’s] decision is supported by substantial

 evidence.” Id. at 14, 565 S.E.2d at 17. “Substantial evidence is that which a

 reasonable mind might accept as adequate to support a conclusion[.]” Sun Suites

 Holdings, L.L.C. v. Bd. of Aldermen of Garner, 139 N.C. App. 269, 273, 533 S.E.2d

 525, 528 (2000). “The ‘whole record’ test does not allow the reviewing court to replace

 the board’s judgment as between two reasonably conflicting views, even though the

 court could justifiably have reached a different result had the matter been before it

 de novo.” Mann Media, 356 N.C. at 14, 565 S.E.2d at 17-18 (citation omitted).
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

¶ 21 Where a party contends the board’s decision was based on an error of law, de

 novo review is proper. Id. at 13, 565 S.E.2d at 17. Under de novo review, the superior

 court “consider[s] the matter anew[] and freely substitutes its own judgment for the

 agency’s judgment.” Sutton v. N.C. Dep’t of Labor, 132 N.C. App. 387, 389, 511 S.E.2d

 340, 341 (1999).

¶ 22 A superior court may apply both the whole record test and de novo review in a

 single case, “but the standards are to be applied separately to discrete issues.” Sun

 Suites, 139 N.C. App. at 273-74, 533 S.E.2d at 528 (citations omitted). This Court

 reviews a superior court’s order reviewing a board’s decision to determine “whether

 the superior court applied the correct standard of review” and “whether the superior

 court correctly applied that standard.” Myers Park Homeowners Ass’n, Inc. v. City of

 Charlotte, 229 N.C. App. 204, 208, 747 S.E.2d 338, 342 (2013) (quotation marks,

 brackets, and citation omitted).

 B. Superior Court’s Articulated Standards of Review

¶ 23 At the outset, Respondent argues that the superior court’s order must be

 vacated for failure to articulate the standard of review it applied to each issue. We

 disagree.

¶ 24 When reviewing an order by a county board of adjustment, a superior court

 “must set forth sufficient information in its order to reveal the scope of review utilized

 and the application of that review.” Mann Media, 356 N.C. at 13, 565 S.E.2d at 17
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 (quotation marks and citations omitted). In this case, Petitioner alleged before the

 superior court that: the Board’s decision to affirm the Letter was arbitrary and

 capricious; the Board’s conclusion that only 234 campsites existed as of 1 January

 2013 was arbitrary and capricious and was not supported by substantial, competent,

 and material evidence; the Board committed an error of law in concluding that

 Petitioner was permitted to modify existing facilities but not construct new facilities;

 and the Board’s decision to affirm the Letter was an abuse of discretion.

¶ 25 The superior court’s order specifically recites these allegations. The superior

 court’s findings, along with its conclusion that “the Board of Adjustment’s decision

 was arbitrary and capricious [and] not supported by substantial, competent and

 material evidence in view of the entire record as set forth above[,]” was sufficient

 information to reveal that the superior court applied the whole record test to

 Petitioner’s arguments that the Board’s decision to affirm the Letter was arbitrary

 and capricious and the Board’s conclusion that only 234 campsites existed as of

 1 January 2013 was arbitrary and capricious and was not supported by substantial,

 competent, and material evidence. Additionally, the superior court’s order

 specifically articulated the de novo standard for Petitioner’s argument that the Board

 committed an error of law in applying the UDO to the proposed improvements. It is

 evident that the superior court articulated the correct standard of review it applied

 to each issue.
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 C. Determination of the Number of Campsites

¶ 26 Respondent argues that the superior court failed to correctly apply the whole

 record test in its review of the Board’s conclusion that, as of 1 January 2013, 234

 improved campsites and a number of tent campsites—determined by dividing the

 delineated tent camping area by 3,000 square feet—existed at the Campground.

 Respondent contends that there was substantial evidence in the record to support the

 Board’s conclusion.

¶ 27 The Board found, in relevant part, as follows:

 19. In 1996 and 1997, Hampton Lodge applied for
 two special event permits at which time they submitted a
 site plan of the campground. The site plan shows 234
 campsites, 90 vehicular parking spaces and an area for tent
 camping. The same site plan was submitted in 1996 and
 1997.
 20. The 96/97 site plan was used at Hampton Lodge
 to direct customers to campsite locations until the
 campground was sold to Sunny in 2018.
 ....
 25. The 96/97 site plan is the most competent
 evidence regarding the number of campsites that existed at
 Hampton Lodge on January 1, 2013.

 26. The site plans submitted by Sunny demonstrate
 392-700 “potential” campsites for Hampton Lodge, not
 existing campsites on January 1, 2013, as required by UDO
 8.2.6.A.(5).
 27. On January 1, 2013, there were 234 existing
 campsites and a designated area which was used for tent
 camping at Hampton Lodge.
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 28. The number of campsites within the tent
 camping area should be calculated based on the designated
 area for tent camping on a scaled version of the 96/97 site
 plan, divided by the minimum campsite size (3000 square
 feet) required by all zoning regulations prior to the 2013
 UDO.

¶ 28 The Board’s findings were supported by the 1996 and 1997 site plans. These

 site plans, submitted to county entities by previous owners of the campgrounds, each

 showed 234 campsites and a tent camping area. The Board found that these site

 plans were used until 2018 “to direct customers to campsite locations,” a finding that

 is not specifically challenged by Petitioner and is therefore binding on appeal. See

 Church v. Bemis Mfg. Co., 228 N.C. App. 23, 26, 743 S.E.2d 680, 682 (2013)

 (“Unchallenged findings of fact are presumed to be supported by competent evidence

 and are binding on appeal.”). The Director also testified that when she visited the

 Campground in June 2018, the tent area was marked with a single sign and

 corresponded to the tent area shown on the 1996 and 1997 site plans. Because a

 “reasonable mind might accept” this evidence “as adequate to support” the Board’s

 determination of the number of campsites, the Board’s determination was supported

 by substantial evidence. See Sun Suites, 139 N.C. App. at 273, 533 S.E.2d at 528.

¶ 29 Petitioner argues that evidence in the record suggested a greater number of

 campsites than found by the Board. This evidence, Petitioner contends, supports the

 superior court’s findings that 314 campsites for RV, trailer, or camper use, and 78
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 campsites for tent camping existed at the campground on 1 January 2013, and that

 “the property has potential, excluding wetland acreage, to be developed differently,

 and more intensely, than as proposed by Petitioner.” While the court must take into

 account “contradictory evidence or evidence from which conflicting inferences could

 be drawn[,]” “[t]he ‘whole record’ test does not allow the reviewing court to replace

 the Board’s judgment as between two reasonably conflicting views, even though the

 court could justifiably have reached a different result had the matter been before it

 de novo[.]” Thompson v. Wake Cnty. Bd. of Educ., 292 N.C. 406, 410, 233 S.E.2d 538,

 541 (1977) (citation omitted).

¶ 30 Here, the Board’s determination of the number of campsites was supported by

 substantial evidence. Although there was the evidence from which conflicting

 inferences could have been drawn, the superior court erred by replacing the Board’s

 judgment with its own, even if “the court could justifiably have reached a different

 result had the matter been before it de novo[.]” Id. The superior court thus

 incorrectly applied the whole-record test to the issue of the number of campsites at

 the Campground on 1 January 2013.

 D. Proposed Improvements to the Campground

¶ 31 Respondent also contends that the superior court erred by reversing the

 Board’s conclusion that the UDO prohibited certain of the proposed improvements to

 the campground. Respondent argues that the Board correctly concluded that both
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 the general standards regarding nonconforming uses and the specific provisions

 concerning nonconforming campgrounds apply to Petitioner’s proposed

 improvements.

¶ 32 Petitioner, on the other hand, argues that the superior court correctly reversed

 the Board’s conclusion that the UDO prohibited certain of the proposed improvements

 to the campground, but erred by affirming the Board’s conclusion that the pool was

 not a permissible improvement. Petitioner argues that only the specific provisions

 concerning nonconforming campgrounds in Chapter 8 control, and that the Board

 committed an error of law by applying the general standards of the UDO concerning

 nonconforming uses. In Petitioner’s view, all of its proposed improvements are

 permitted under the UDO because they do not expand the Campground’s land area

 or add to the number of campsites that existed on 1 January 2013.

¶ 33 The resolution of this dispute turns on the proper construction of Chapter 8 of

 the UDO. Chapter 8 of the UDO regulates nonconforming uses. While

 nonconforming uses “are allowed to continue, and are encouraged to receive routine

 maintenance[,]” UDO § 8.1.2., the “purpose and intent” of Chapter 8 “is to regulate

 and limit the continued existence” of nonconforming uses. UDO § 8.1.1. Non-

 conforming uses and structures “are not favored under the public policy of North

 Carolina, and zoning ordinances are construed against indefinite continuation of a

 non-conforming use.” Jirtle v. Bd. of Adjustment for the Town of Biscoe, 175 N.C.
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 App. 178, 181, 622 S.E.2d 713, 715 (2005) (quotation marks and citation omitted).

¶ 34 Section 8.2.3. provides general standards concerning the “[e]xpansion and

 [e]nlargement” of nonconforming uses:

 A. Except in accordance with this subsection, a
 nonconforming use shall not be enlarged, expanded in area,
 or intensified.

 B. An existing nonconforming use may be enlarged into
 any portion of the structure where it is located provided the
 area for proposed expansion was designed and intended for
 such use prior to the date the use became a nonconformity.
 In no instance shall a nonconforming use be extended to
 additional structures or to land outside the original
 structure.

 C. Open air uses that are nonconformities, including but
 not limited to outdoor sales areas, parking lots, or storage
 yards, shall not be extended to occupy more land area than
 that in use when the open air use became nonconforming.

 U.D.O. § 8.2.3.

¶ 35 Chapter 8 also contains specific provisions governing nonconforming

 campgrounds. “Existing campgrounds may not be expanded to cover additional land

 area or exceed the total number of campsites that existed on January 1, 2013.” UDO

 § 8.2.6.B.(1). “Modifications to existing campgrounds are permitted provided the

 changes do not increase the nonconformity with respect to the number of campsites

 that existed on January 1, 2013.” UDO § 8.2.6.A.(5).

¶ 36 Ordinary principles of statutory construction apply to local zoning ordinances

 such as the UDO. See Westminster Homes, Inc. v. Town of Cary Zoning Bd. of
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 Adjustment, 354 N.C. 298, 303, 554 S.E.2d 634, 638 (2001). Generally, “when two

 statutes arguably address the same issue, one in specific terms and the other

 generally, the specific statute controls.” High Rock Lake Partners, LLC v. N.C. Dep’t

 of Transp., 366 N.C. 315, 322, 735 S.E.2d 300, 305 (2012) (citations omitted). But our

 courts have also recognized that, where possible, general and specific provisions

 addressing the same subject “should be read together and harmonized[.]” LexisNexis

 Risk Data Mgmt. v. N.C. Admin. Off. of Cts., 368 N.C. 180, 186, 775 S.E.2d 651, 655

 (2015) (quotation marks and citations omitted).

¶ 37 Here, it is possible to construe the general provisions concerning

 nonconforming uses and the specific provisions concerning campgrounds

 harmoniously: Section 8.2.3. applies to all nonconforming uses, including

 nonconforming campgrounds, while section 8.2.6. imposes additional requirements

 on nonconforming campgrounds. Thus, modifications to a nonconforming

 campground may not result in it being “enlarged, expanded in area, or intensified[,]”

 UDO § 8.2.3.A., nor may modifications expand a campground beyond the land area

 or number of campsites existing as of 1 January 2013, UDO § 8.2.6.B.(1), or otherwise

 “increase the nonconformity with respect to the number of campsites that existed” on

 that date, UDO § 8.2.6.A.(5). This construction satisfies the “cardinal rule of

 statutory construction that significance and effect should . . . be accorded every part

 of the act, including every section, paragraph, sentence or clause, phrase, and word.”
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 State v. Williams, 286 N.C. 422, 432, 212 S.E.2d 113, 120 (1975) (quotation marks

 and citation omitted).

¶ 38 Moreover, Petitioner’s interpretation of Chapter 8 is contrary to the principle

 that “[a] construction which operates to defeat or impair the object of the statute must

 be avoided if that can reasonably be done without violence to the legislative

 language.” Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 215, 388 S.E.2d 134,

 140 (1990) (quoting State v. Hart, 287 N.C. 76, 80, 213 S.E.2d 291, 295 (1975)).

 Petitioner’s interpretation would allow any and all improvements to a nonconforming

 campground so long as they do not enlarge the campground’s land area or number of

 campsites beyond that which existed on 1 January 2013 or otherwise change the

 campground to another nonconforming use under section 8.2.2. Under this

 interpretation, an owner could indefinitely extend the lifespan of a nonconforming

 campground by regularly upgrading the campground with new amenities. This

 would contradict the stated purposes of Chapter 8 to “regulate and limit the

 continued existence” of nonconforming uses, UDO § 8.1.1. (emphasis added), and

 promote the continued viability of a land use that the County has deemed “generally

 incompatible with the permitted uses in the district[,]” see UDO § 8.2.1. (defining

 nonconforming uses).

¶ 39 The Board’s determination that “[t]he new facilities proposed by [Petitioner]

 qualify as an impermissible expansion, enlargement and intensification of a
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 nonconforming use and are not permitted” was in accordance with law, consistent

 with the purpose and intent of UDO Chapter 8 regulating and limiting the continued

 existence of nonconforming uses, and properly preserved the legislative body’s intent.

 The trial court did not err by affirming the Board’s conclusion that the pool was not

 a permissible proposed improvement. However, the trial court erred by reversing the

 Board’s conclusion that the remainder of the new facilities proposed by Petitioner are

 an impermissible expansion, enlargement, and intensification of a nonconforming use

 and are not permitted.

 III. Conclusion

¶ 40 The superior court articulated the proper standard of review to apply to each

 issue on appeal.

¶ 41 The superior court incorrectly applied the whole record test to the Board’s

 determination of the number of campsites on Petitioner’s campground as of 1 January

 2013 as the Board’s decision concerning the number of campsites on the Campground

 was supported by substantial, competent evidence in view of the entire record.

¶ 42 The superior court correctly applied de novo review and properly affirmed the

 Board’s conclusion that Petitioner’s proposed swimming pool is an impermissible

 expansion, enlargement, and intensification of a nonconforming use and is not

 permitted under the UDO. The superior court incorrectly applied de novo review and

 erred by reversing the Board’s conclusion that the remaining new facilities proposed
 85’ AND SUNNY, LLC V. CURRITUCK COUNTY

 2021-NCCOA-422

 Opinion of the Court

 by Petitioner are an impermissible expansion, enlargement, and intensification of a

 nonconforming use and are not permitted.

¶ 43 Accordingly, we affirm the portion of the superior court’s order that affirms the

 Board’s conclusion regarding the pool. We reverse the remainder of the superior

 court’s order and remand this matter to the superior court to affirm the remainder of

 the Board’s order. The net result is that the Board’s order affirmed.

 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

 Chief Judge STROUD and Judge WOOD concur.